UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                            )<br>                    Plaintiff,                  )<br>                                                            )<br>v.                                                       )<br>                                                            )<br>KENNETH LEROY AUSTIN,          )<br>                                                            )<br>                    Defendant.               )<br>_____) | 3:14-CR-0070-LRH-WGC<br><br>ORDER |

On April 20, 2015, Defendant Kenneth Leroy Austin ("Austin") pleaded guilty to one count of receipt of child pornography, a violation of Title 18, United States Code, Section 2256(8). Doc. #17.[1] The Court imposed a sentence on August 24, 2015, and scheduled a separate restitution hearing for September 9, 2015. Doc. #26. At the sentencing hearing, the parties presented their restitution arguments for two identified victims, "Vicky" and "Cindy." The government suggested that Austin pay restitution in the amount of $7500 to Vicky and $1000 to Cindy. Austin offered restitution in the amount of $3750 to Vicky and $500 to Cindy. After considering the parties' suggestions, the restitution requests of Vicky and Cindy, and the factors identified in the Supreme Court's *Paroline* decision, the Court grants restitution in the amount of $7500 to Vicky and $1000 to Cindy.

///

---

[1] Refers to the Court's docket number.

## I.   Discussion

In Title 18 U.S.C. § 2259, the Mandatory Restitution for Sexual Exploitation of Children Act provides that a district court "shall order restitution for any offense" under Chapter 110 of Title 18. Austin pleaded guilty to receipt of child pornography, a Chapter 110 offense. The award of restitution is mandatory. 18 U.S.C. § 2259(b)(4). Accordingly, Austin shall "pay the victim[s] . . . the full amount of the victim[s'] losses as determined by the Court." *Id.* § 2259(b)(1). The statute states that it must be "enforced in accordance with section 3664," *id.* § 2259(b)(2), which provides in relevant part that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government," *id*. § 3664(3). *See Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). The Supreme Court held in *Paroline* that restitution is proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. The Supreme Court added that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727.

The Court stressed that there is no "precise algorithm for determining the proper restitution amount," but that there are "a variety of factors district courts might consider." *Id.* at 1728. As a starting point, the Court suggested that a court "determine the amount of the victim's losses caused by the continuing traffic in the victim's images" and "then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.* These factors include: (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses"; (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)"; (4) "whether the defendant reproduced or distributed images of the victim"; (5) "whether the defendant had any connection to

the initial production of the images"; (6) "how many images of the victim the defendant possessed"; and (7) "other facts relevant to the defendant's relative causal role." *Id.*

Austin argued in his sentencing memorandum that a restitution award would be moot because due to his financial situation "it is not realistic to expect Mr. Austin to immediately pay restitution." The mandatory restitution statute explicitly states that restitution cannot be foregone because of the economic circumstances of the defendant, or because the victim received restitution from other sources. 18 U.S.C. § 2259(4)(B). Accordingly, the Court shall determine the amount of restitution to be paid to Vicky and Cindy based on the factors identified by *Paroline*.

**A.  Starting Point: Losses Caused by Continuing Traffic in Images**

Some courts have difficulty determining a starting point for the losses caused by the "continuing trafficking" of images. In *Paroline*, the Court noted that the victim, "Amy," had been abused as a child and had recovered with the help of a therapist. 134 S. Ct. at 1717. However, Amy's subsequent discovery that images of her abuse were being shared online "renewed the victim's trauma and made it difficult for her to recover from her abuse." *Id.* On remand, the district court was then tasked with determining what amount of Amy's losses were proximately caused specifically by the "continuing trafficking" of the images.

Vicky's attorney represents that the total amount of Vicky's economic losses is $1,085,718.09, of which $397,127.19 has not yet been recovered. Vicky has not identified what portion of her losses are attributable to past counseling and medical expenses. The government requests $7500 in restitution and represents that Vicky has agreed that this amount is reasonable. Cindy's attorney represents that the total amount of Cindy's economic losses is $1,396,238.99, of which $128,669.38 represents "[p]ast counseling and other medical expenses." The government requests $1000 in restitution and represents that Cindy has agreed that this amount is reasonable.

In another case involving restitution to Vicky and Cindy, the court held that the defendant "should not be ordered to pay restitution for medical care that [the victim] received several years before [the defendant] ever possessed her images" because these losses were not proximately

3

caused by the defendant's possession of the images. *United States v. Reynolds*, No. 12-20843, 2014 WL 4187936, at *5 (E.D. Mich. Aug. 22, 2014). As a result, the court held that "it is simply not possible for the Government to show, 'as a starting point,' the amount of losses caused by the 'continuing trafficking' in Cindy and Vicky's images." *Id.* at *6.[2] Acknowledging that a "theoretical starting point will simply not exist in many cases," the court then considered the other factors identified by *Paroline*. *Id.* As in *Reynolds*, the Court finds that it is not possible to identify a clear "starting point" for the restitution awards to Vicky and Cindy.

### B. Consideration of Other *Paroline* Factors

As the *Reynolds* court noted, *Paroline* is of limited use because no logical starting point can be determined. However, the Court proceeds to consider the other factors suggested by *Paroline*.

#### 1. Number of Past Defendants Who Contributed to the Victims' Losses

Vicky states that she has to date received $688,590.90 in restitution from other defendants, and that the net amount of remaining economic losses is $397,127.19. Cindy has not identified the amount of restitution that she has received to date, or the amount of her remaining losses. This factor does not warrant increasing or decreasing the restitution awards.

#### 2. "Reasonable Predictions" and "Reliable Estimate" of Future Offenders

The second and third *Paroline* factors involve "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses," and "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted.)" The Court agrees with

---

[2] Other courts addressing cases involving Vicky and Cindy following *Paroline* have similarly determined that it is not possible to determine a logical "starting point." *See, e.g.*, *United States v. Campbell-Zorn*, No. 14-0041, 2014 WL 7215214, at *4 (D. Mont. Dec. 17, 2014) ("*Paroline*'s suggested 'starting point' for determining the victims' losses incurred due to the continuing traffic in their images is unusable when the victims' losses from the actual sexual abuse have not been resolved."); *United States v. Crisostomi*, 31 F. Supp. 3d 361, 364 (D.R.I. 2014) (noting that a number of the *Paroline* factors "are virtually unknown or unknowable, regardless of the detail available in the record"); *United States v. McIntosh*, No. 4:14-cr-0028, 2014 WL 5422215, at *5 (E.D. Va. Oct. 22, 2014) (noting that courts have had difficulty determining a starting point in restitution analyses for Vicky and Cindy).

*Reynolds* that these two factors are "incredibly speculative," and neither party has introduced evidence regarding likely number of future offenders. *Id*. Accordingly, these factors do not impact the restitution awards in this case.

### 3. Distribution or Reproduction of Images

There is no evidence that Austin distributed or reproduced images of Vicky or Cindy. This factor therefore does not affect the restitution awards in this case.

### 4. Connection to Initial Production of Images

It is undisputed that there is no evidence connecting Austin to the initial production of these images. This factor therefore does not affect the restitution awards in this case.

### 5. Number of Images Possessed

It is undisputed that Austin possessed one image of Cindy and two images and seven videos of Vicky. The Court finds that it is appropriate to increase the restitution award to Vicky based on this factor.

### 6. Other Factors Relative to Austin's Causal Role

Many courts consider the nature of the images possessed as the final factor in the restitution amount analysis. In *Reynolds*, the court increased the restitution awards because the images possessed portrayed sadistic conduct. The Court agrees with this approach. The Supreme Court has acknowledged that "costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes, including possession." *Paroline*, 134 S. Ct. at 1722. The Court therefore finds that it is appropriate to increase the restitution awards based on the disturbing nature of the photographs possessed by Austin.

## II. Conclusion

Based on the *Paroline* factors discussed above, the Court finds that it is appropriate to grant the government's restitution requests for Vicky and Cindy. The Court therefore grants Vicky restitution in the amount of $7500 and Cindy restitution in the amount of $1000.

1  IT IS THEREFORE ORDERED that Austin shall pay restitution to the government on
2 behalf of Vicky in the amount of $7500 and Cindy in the amount of $1000.
3  IT IS SO ORDERED.
4  DATED this 8th day of September, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE